**HAGENS BERMAN SOBOL SHAPIRO LLP**
Lucas E. Gilmore (Bar No. 250893)
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
lucasg@hbsslaw.com

*Liaison Counsel for Plaintiff*

**LABATON KELLER SUCHAROW LLP**
Francis P. McConville (*pro hac vice* forthcoming*)*
Connor C. Boehme *(pro hac vice* forthcoming*)*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
fmcconville@labaton.com
cboehme@labaton.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEW ENGLAND TEAMSTERS PENSION FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SYNOPSYS, INC., SASSINE GHAZI, SHELAGH GLASER, SUDHINDRA KANKANWADI, AART J. DE GEUS, LUIS BORGEN, MARC N. CASPER, JANICE D. CHAFFIN, BRUCE R. CHIZEN, MERCEDES JOHNSON, ROBERT G. PAINTER, JEANNINE P. SARGENT, JOHN G. SCHWARZ, and ROY VALLEE,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><br>**DEMAND FOR JURY TRIAL** |

1.    New England Teamsters Pension Fund ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' (as defined herein) public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Synopsys, Inc. ("Synopsys" or the "Company"), analysts' reports, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

2.    This federal securities class action, which asserts both strict liability claims under the Securities Act of 1933 (the "Securities Act") and fraud-based claims under the Securities Exchange Act of 1934 (the "Exchange Act"). This action arises from Defendants' (as defined herein) materially false and misleading statements and omissions to investors regarding Synopsys' business operations, financial performance, and market conditions.

3.    This is a class action brought on behalf of:

(a)    All persons and entities that purchased or otherwise acquired Synopsys securities between December 4, 2024 and September 9, 2025, inclusive (the "Class Period"), against Synopsys and the Exchange Act Individual Defendants (as defined herein) for violations of the federal securities laws under §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder; and

(b)    All persons who purchased or otherwise acquired Synopsys common stock in exchange for their shares of Ansys, Inc. ("Ansys") common stock in the Acquisition (as defined herein), for violations of Sections 11, 12(a)(2), and 15 of the Securities Act, against Synopsys and the Securities Act Defendants (as defined herein).

4.    Synopsys is a Mountain View, California-based technology company that provides software, intellectual property, and services used to design and verify advanced semiconductor chips.

The Company's products include electronic design automation ("EDA") tools, pre-designed semiconductor components known as Design IP, and software security and quality testing solutions. Synopsys' customers, which include major semiconductor and electronics manufacturers, rely on its tools to manage complex chip design processes and accelerate time to market.

5.     On January 16, 2024, the Company announced that Synopsys had entered into an agreement to acquire Ansys for total consideration of about $35 billion (the "Acquisition"). Synopsys President and Chief Executive Officer ("CEO") Defendant Sassine Ghazi, touted the benefits of the proposed merger, stating that it would "deliver a holistic, powerful and seamlessly integrated silicon to systems approach to innovation to help maximize the capabilities of technology R&D teams across a broad range of industries."

6.     On March 14, 2024, Synopsys filed with the SEC a registration statement for the Acquisition on Form S-4, which, after an amendment, was declared effective on April 17, 2024 (the "Registration Statement"). On April 17, 2024, Synopsys filed with the SEC a prospectus and proxy statement for the Acquisition on Form 424B3 (the "Prospectus" and together with the Registration Statement, the "Acquisition Materials"). The Acquisition Materials stated that Ansys shareholders would receive $197.00 in cash and 0.345 shares of Synopsys common stock in exchange for each share of Ansys they held at the time of the merger.

7.     Defendants misled investors by failing to disclose the following adverse facts: (1) the Company's growing emphasis on artificial intelligence ("AI") customers, who require more customization, was weakening the economics of its Design IP business; (2) as a result, certain of the Company's road map and resource choices were unlikely to achieve their intended outcomes; (3) these issues were materially harming the Company's financial performance; and (4) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects that were made during the Class Period or contained in the Acquisition Materials were materially misleading and/or lacked a reasonable basis.

8.     On September 9, 2025, investors learned the truth about the negative impact of Synopsys' operational challenges within its Design IP business. On that day, Synopsys reported its third quarter 2025 financial results and revealed that the Company's "IP business underperformed

expectations." Defendant Ghazi reported that revenues for its Design IP segment had declined eight percent year-over-year and that the Company would "need to pivot our IP resources and road map to the highest-growth opportunities." On this news, Synopsys' stock price fell by ***35.8 percent***, dropping from $604.37 to $387.78 per share on September 10, 2025.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and Class members have suffered significant losses and damages.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), SEC Rule 10b-5 (17 C.F.R. §§ 240.10b-5), and Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l, and 77o).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, Section 27 of the Exchange Act (15 U.S.C. § 78aa), and Section 22 of the Securities Act (15 U.S.C. § 77v).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)), and Section 22 of the Securities Act (15 U.S.C. § 77v(a)) because Synopsys maintains offices in this District and many of the acts giving rise to the violations complained of in this Action, including the preparation and dissemination of materially false and misleading statements, occurred in substantial part in this District. The intra-district assignment to the San Jose division of the Court is proper under Local Rule 3-2(e) because a substantial number of the events or omissions giving rise to the claims arose in Sunnyvale County, where Synopsys is headquartered and the Defendants conduct business.

13.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange.

**COMPANY BACKGROUND**

14.     Synopsys is a leading provider of electronic design automation software and semiconductor IP used by companies that design advanced chips and complex electronic systems. Its customers include major semiconductor manufacturers, fabless chip designers, systems companies, and technology firms developing products for areas such as AI, automotive, cloud computing, and consumer electronics. Synopsys holds a key position in the chip design ecosystem because its tools are essential for creating, testing, and verifying modern integrated circuits.

15.     Synopsys generates revenue primarily through two segments: (1) EDA (Electronic Design Automation), which includes software tools and services for designing, simulating, verifying, and analyzing integrated circuits and complex electronic systems; and (2) Design IP, which provides prebuilt semiconductor intellectual property blocks such as interface protocols, embedded processors, security IP, and related subsystems. The Company licenses its EDA tools and IP through long-term agreements and maintenance contracts and offers related support services. Synopsys' EDA software and IP are essential for modern chip development, helping customers improve design efficiency, reduce errors, and accelerate time to market.

16.     On March 14, 2024, Synopsys filed with the SEC a registration statement for the Acquisition on Form S-4, which, after an amendment, was declared effective on April 17, 2024. On April 17, 2024, Synopsys filed with the SEC a prospectus for the Acquisition on Form 424B3. The Acquisition Materials stated that Ansys shareholders would receive $197.00 in cash and 0.345 shares of Synopsys common stock in exchange for each share of Ansys they held at the time of the merger (other than shares of Ansys common stock held by Synopsys or certain of its subsidiaries, shares held by Ansys in treasury, or shares for which appraisal was properly demanded under Delaware law).

17.     Unbeknownst to investors, leading up to and at the time of the Acquisition, Synopsys' historical revenue and profit growth as represented in their Acquisition Materials were artificially inflated by the Company's unsustainable business practices. Throughout the Class Period and at the time of the Acquisition, the price of Synopsys common stock was similarly inflated by Synopsys' continuous misrepresentations. At all relevant times, these undisclosed practices exposed the Company to a severe, but unrevealed, risk of diminished business and financial prospects.

# PARTIES

**A.    Plaintiff**

18.    New England Teamsters Pension Fund, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased Synopsys securities during the Class Period and was damaged as the result of Defendants' wrongdoing alleged in this complaint.

**B.    Exchange Act Defendants**

19.    Defendant Sassine Ghazi ("Ghazi") was the Company's Chief Executive Officer ("CEO") at all relevant times.

20.    Defendant Shelagh Glaser ("Glaser") was the Company's Chief Financial Officer ("CFO") at all relevant times.

21.    Defendants Ghazi and Glaser are collectively referred to herein as the "Exchange Act Individual Defendants."

22.    The Exchange Act Individual Defendants possessed the power and authority to control the contents of Synopsys' SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided with copies of Synopsys' SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions within Synopsys, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

23.    The Company and the Exchange Act Individual Defendants are sometimes collectively, in whole or in part, referred to herein as the "Exchange Act Defendants."

**C.    Securities Act Defendants**

24.    Defendant Synopsys is both an Exchange Act and a Securities Act Defendant.

25.    Defendant Ghazi is both an Exchange Act Defendant and a Securities Act Defendant and signed the Acquisition Materials.

26.     Defendant Glaser is both an Exchange Act Defendant and a Securities Act Defendant and signed the Acquisition Materials.

27.     Defendant Sudhindra Kankanwadi served as Chief Accounting Officer of Synopsys at the time of the Acquisition and signed the Acquisition Materials.

28.     Defendant Aart J. de Geus was the Executive Chair of Synopsys' Board at the time of the Acquisition and signed the Acquisition Materials.

29.     Defendant Luis Borgen was a Director on Synopsys' Board and signed the Acquisition Materials.

30.     Defendant Marc N. Casper was a Director on Synopsys' Board and signed the Acquisition Materials.

31.     Defendant Janice D. Chaffin was a Director on Synopsys' Board and signed the Acquisition Materials.

32.     Defendant Bruce R. Chizen was a Director on Synopsys' Board and signed the Acquisition Materials.

33.     Defendant Mercedes Johnson was a Director on Synopsys' Board and signed the Acquisition Materials.

34.     Defendant Robert G. Painter was a Director on Synopsys' Board and signed the Acquisition Materials.

35.     Defendant Jeannine P. Sargent was a Director on Synopsys' Board and signed the Acquisition Materials.

36.     Defendant John G. Schwarz was a Director on Synopsys' Board and signed the Acquisition Materials.

37.     Defendant Roy Vallee was a Director on Synopsys' Board and signed the Acquisition Materials.

38.     The defendants identified in ¶¶ 25-37 (collectively, the "Securities Act Individual Defendants") signed the Acquisition Materials.  The Securities Act Individual Defendants failure to conduct adequate due diligence in connection with the Acquisition and the preparation of the Acquisition Materials was a substantial factor leading to the harm complained of herein.

39. All Securities Act Individual Defendants along with Synopsys, are referred to herein as the "Securities Act Defendants."

40. All defendants, including both Exchange Act Defendants and Securities Act Defendants, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS – EXCHANGE ACT CLAIMS

**A.     Materially False and Misleading Statements Issued During the Class Period**

41. The Class Period begins on December 4, 2024. On that day, Synopsys issued a press release announcing the financial results for its fourth fiscal quarter and fiscal year ended October 31, 2024. The press release stated that the Company's results were driven by "continued strong execution" and that "[t]he combination of our execution focus, operating discipline, and the critical nature of our industry-leading technology positions us well for the future."

42. On the same day, Synopsys hosted an earnings call for the fourth quarter of 2024 (the "Q4 2024 Call"). On the Q4 2024 Call, Defendant Ghazi highlighted the Company's strong momentum and strategic focus: "***We have strong momentum across the business supported by multiple secular growth drivers. We have a very resilient business model and are mission-critical to our customers' innovation. We are aligning our portfolio investment with the greatest return potential and aligning our operations to accelerate our growth***."

43. Defendant Ghazi described the Company's performance across different semiconductor markets, stating:

> I like to think of it as we are in a tale of two markets, the one that our customers are serving, the AI infrastructure buildout. They're doing incredibly well, and we're benefiting beautifully out of it. These are the companies that they're delivering memory chips, advanced logics, be it CPU, accelerator, GPU, et cetera. ***And that's helping across the board the Synopsys portfolio, the EDA, hardware, IP, et cetera***. But let's not forget there's another cohort, which is the rest of the semiconductor market, the one that they're serving mobile, PC, automotive, industrial. They're still in many ways, trying to have a refresh cycle for their products and leverage AI on devices. For us, for that cohort, given we're tied to their R&D, we're still doing fine, but it's not delivering to similar level of growth as the first cohort. So, that's from a market point of view.[1]

---

[1] All emphasis is added unless otherwise noted.

44.     On December 19, 2024, Synopsys filed with the SEC a form 10-K reporting the Company's financial results for the fiscal year ended October 31, 2024 (the "2024 10-K"). The 2024 10-K contained the following risk factors concerning the Company's business and operational risks:

> Consolidation among our customers and within the industries in which we operate, as well as our dependence on a relatively small number of large customers, ***may*** negatively impact our operating results.
>
> …
>
> Changes in demand for our products due to customers reducing their expenditures, which may be a result of customer cost-cutting measures or insolvency or bankruptcy, sustained global inflationary pressures and elevated interest rates or other reasons;
>
> …
>
> ***We may not be successful in our AI initiatives, which could adversely affect our business, operating results or financial condition.***
>
> ...
>
> ***Changes in the mix of our products sold, as increased sales of our products with lower gross margins***, such as our hardware products, may reduce our overall margins;
>
> ...
>
> ***If we fail to optimize our EDA and IP solutions*** for use with major foundries' manufacturing processes or major IP providers' products, or if our access to such foundry processes or third-party IP products is hampered, then our solutions may become less desirable to our customers, resulting in an adverse effect on our business and financial condition.

45.     On January 16, 2025, at the 27th Annual Needham Growth Conference, Defendant Glaser emphasized how closely Synopsys works with its customers in its IP Business, stating "when we think about our IP business and our hardware business***, we are working shoulder to shoulder with our customers.  So, you can think about us as being almost a member of the design team***."

46.     On February 26, 2025, Synopsys filed with the SEC a form 10-Q reporting the Company's financial results for the quarter ended January 31, 2025 (the "Q1 2025 10-Q"). The Q1 2025 10-Q was signed by Defendant Glaser and included certifications signed by Defendant Ghazi and Glaser pursuant to the Sarbanes-Oxley Act of 2002 (the "SOX Act"). The Q1 2025 contained substantially the same risk factors identified in ¶ 44, *supra*.

47.    That same day, the Company hosted an earnings call for the first quarter of 2025 (the "Q1 2025 Call"). During the Q1 2025 Call, Defendant Ghazi touted the strength of the Company's IP, stating: "While IP revenue can fluctuate quarter-to-quarter, *the opportunity set for IP continues to expand, particularly as AI customers accelerate protocol transitions* and look for creative ways to drive enhanced performance per watt." Defendant Ghazi described the Company's visibility into their customers: "as you can imagine, *we are very intimate with every customers, chips road map, investments, et cetera, and we track it very, very closely.*"

48.    Defendant Ghazi assured investors that customer behavior had not changed, stating:

> *There is definitely no change in terms of customer behavior*. And as you know, Joe, the backlog, you build and burn the backlog. The EDA type of contracts, they are still on the same average duration. *So we have not seen a big customer behavior change at all*. On IP and hardware, as I mentioned in the tale of two markets remarks, that even though the contract may be committed by when the customer pulls it down varies based on the pace in which they are building these chips. *So -- but there is no behavior change from customer or market point of view or anything differently we're driving in terms of extending durations with customers.*

49.    On May 28, 2025, Synopsys filed with the SEC a form 10-Q reporting the Company's financial results for the quarter ended April 30, 2025 (the "Q2 2025 10-Q"). The Q2 2025 10-Q was signed by Defendant Glaser and included certifications signed by Defendant Ghazi and Glaser pursuant to the SOX Act. The Q2 2025 contained substantially the same risk factors identified in ¶ 44, *supra*.

50.    That same day, the Company hosted an earnings call for the second quarter of 2025 (the "Q2 2025 Call"). During the Q2 2025 Call, Defendant Ghazi was asked about the Company's relationship with its largest customer:

> Yes, I'm assuming you're talking about Intel in this case. *As we have communicated again that Intel has a mix of EDA software, IP and hardware. These are multi-year committed agreements*. And same as with other customers, as their road map may be fluctuating or there are some rethinking about the road map, it does not impact generally the EDA software. *There might be some impact on hardware and IP pull down*, even though those agreements are committed, non-cancelable, there might be quarter-over-quarter fluctuation, but that's really about it at this stage.

51.     On the Q2 2025 Call, Defendant Ghazi touted the strength of the Company's portfolio:

> Now weaving into the next part of your question, ***that's due to the strength that we are seeing and have seen in other regions as well in the complete part of the portfolio.*** Recall, we announced our hardware systems. and very well received by our customers, strong momentum. And we have always planned the year in a 45-55 fashion, 45% the first half, 55% in the second half. And the reason the shape is that way is with the anticipation of a bigger second half as we continue on rolling out our hardware system and of course, ***having visibility over renewals and our IP demands and EDA software based on our knowledge and insights with customers' road map***. And when you -- the point you made regarding Q1, Q2, we actually were at or above the midpoint of guidance. So there were no surprises. ***We delivered to exactly what we said we're going to deliver, and that's the expectation for the second half.***

52.     The statements referenced in ¶¶ 41-51 were materially false and misleading because Defendants failed to disclose that: (1) the Company's growing emphasis on artificial intelligence customers, who require more customization, was weakening the economics of its Design IP business; (2) as a result, certain of the Company's road map and resource choices were unlikely to achieve their intended outcomes; (3) these issues were materially harming the Company's financial performance.

## THE TRUTH IS REVEALED

53.     Defendants' fraud was revealed on September 9, 2025, when the truth emerged about the negative effects of Synopsys' heightened focus on AI related projects and the operational problems within its Design IP business.  On that day, Synopsys released its third quarter 2025 financial results and acknowledged that the Company's "IP business underperformed expectations." During the accompanying earnings call, Defendant Ghazi disclosed that Design IP revenue had declined eight percent year-over-year and explained that the Company would need to redirect its IP resources and road map toward areas with stronger growth potential.   Management further acknowledged that several anticipated IP deals had not materialized and that issues involving a major foundry customer had contributed to the shortfall, signaling to investors that earlier assurances about the strength of the Company's IP business had been misleading.

54.     On this news, Synopsys' stock price fell by ***35.8 percent***, dropping from $604.37 to $387.78 per share on September 9, 2025.

55.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET**

56.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    the omissions and misrepresentations were material;

(c)    the Company's securities traded in an efficient market;

(d)    the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e)    Plaintiff and other members of the Class purchased Synopsys securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

57.    At all relevant times, the market for Synopsys securities was efficient for the following reasons, among others:

58.    As a result of the foregoing, the market for Synopsys securities promptly digested current information regarding Synopsys from all publicly available sources and reflected such information in the price of Synopsys securities.

(a)    as a regulated issuer, Synopsys filed periodic public reports with the SEC;

(b)    Synopsys regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major newswire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c)    Synopsys was followed by numerous securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of

their respective brokerage firms and that were publicly available and entered the public marketplace; and

(d)    Synopsys securities were actively traded in an efficient market, including its common stock that was traded on the NASDAQ under the ticker symbol "SNPS."

**NO SAFE HARBOR**

59.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Synopsys who knew that the statement was false when made.

**LOSS CAUSATION**

60.    During the Class Period, as detailed herein, Synopsys and the Individual Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. These false and misleading statements and omissions artificially inflated the price of Synopsys securities and operated as a fraud or deceit on the Class. Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Synopsys securities fell significantly. As a result of their purchases of Synopsys securities during the Class Period, Plaintiff and the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

**COUNT I**

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against Synopsys and the Exchange Act Individual Defendants**

61.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.     This Count is asserted against the Exchange Act Defendants based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

63.     During the Class Period, the Exchange Act Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

64.     The Exchange Act Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

      (a)     employed devices, schemes and artifices to defraud;

      (b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

      (c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

65.     The Exchange Act Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.  These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading

statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

66.     The Exchange Act Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Synopsys personnel to members of the investing public, including Plaintiff and the Class.

67.     As a result of the foregoing, the market price of Synopsys securities was artificially inflated during the Class Period.  In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Synopsys securities during the Class Period in purchasing Synopsys securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

68.     Had Plaintiff and the other members of the Class been aware that the market price of Synopsys securities had been artificially and falsely inflated by the Exchange Act Defendants' misleading statements and by the material adverse information which the Exchange Act Defendants did not disclose, they would not have purchased Company securities at the artificially inflated prices that they did, or at all.

69.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

70.     By reason of the foregoing, the Exchange Act Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Synopsys securities during the Class Period.

**COUNT II**

**Violations of Section 20(a) of The Exchange Act**
**Against the Exchange Act Individual Defendants**

71.    Plaintiff repeats, and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.    During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

73.    As officers of a public business, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

74.    Because of their positions of control and authority as senior executives and/or directors, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations.  Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein.  The Exchange Act Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

75.    By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

### SUBSTANTIVE ALLEGATIONS – SECURITIES ACT CLAIMS

**A.    Materially False and Misleading Statements and Omissions Contained in the Acquisition Materials**

76.    The Acquisition Materials were negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make necessary disclosures required under the rules and regulations governing its preparation.

77.    The Acquisition Materials incorporated by reference the risk factors identified in the 2023 10-K, which contained substantially the same as the risk factors referenced in ¶ 41, *supra*.

78.    The statement in ¶ 77 was materially false and misleading when made because Synopsys failed to disclose the following adverse facts that existed prior to and at the time of the Acquisition: (1) the Company's growing emphasis on artificial intelligence customers, who require more customization, was weakening the economics of its Design IP business; (2) as a result, certain of the Company's road map and resource choices were unlikely to achieve their intended outcomes; and (3) these issues were materially harming the Company's financial performance.

79.    Based on the events and disclosures described in ¶¶ 53-54, which occurred after the Acquisition, the Acquisition Materials contained materially false and misleading statements. Subsequent to the Acquisition, the price of Synopsys common stock declined substantially.   By November 24, 2025, Synopsys common stock closed at $404.63, *a 31% decline* from its price of $589.01 on the day of the Acquisition.

80.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### COUNT III

### For Violation for Section 11 of the Securities Act Against the Securities Act Defendants

81.    Plaintiff repeats and realleges the allegations contained in ¶¶ 1-60, 76-80 as if fully set forth herein.

82.    This Count is brought under Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of Section 11, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

83.    The Acquisition Materials contained inaccurate and misleading statements of material fact, omitted facts necessary to render statements therein not misleading, and omitted to state material facts required to be stated therein.

84.    Defendants were responsible for the contents and dissemination of the Acquisition Materials.  Each of the Securities Act Individual Defendants signed or authorized the signing of the Acquisition Materials on their own behalf.

85.    Synopsys is strictly liable to the Class for the Acquisition Materials' misstatements and omissions.  Signatories of the Acquisition Materials, and possibly other Defendants, may also be strictly liable to the Class for such material misstatements and omissions.  None of the defendants made a reasonable investigation or possessed reasonable grounds to believe that the statements in the Acquisition Materials were complete, accurate, or non-misleading.

86.    Less than one year has elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which these claims are based to the time that Plaintiff filed this action.  Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this action.

## COUNT IV

### For Violation of Section 12(a)(2) of the Securities Act Against the Securities Act Defendants

87.    Plaintiff repeats and realleges the allegations contained in ¶¶ 1-60, 76-80 as if fully set forth herein.

88.    This Cause of Action is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of the Class, against the Securities Act Defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of Section 12(a)(2), and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

89.     Each of the Defendants named in this Count were sellers, offerors, or solicitors of purchasers of the Company's securities pursuant to the defective prospectus which respectively formed in relevant part the Registration Statement.  The actions of solicitation by the Securities Act Defendants include participating in the preparation of the false and misleading prospectus and marketing the common stock to investors, including members of the Class.

90.     The Prospectus, which made up part of the Acquisition Materials, contained untrue statements of material fact, omitted to state other facts necessary to make statements made therein not misleading, and omitted to state material facts required to be stated therein.

91.     Each of the Securities Act Defendants owed members of the Class who purchased or otherwise acquired Synopsys common stock pursuant to the Prospectus issued in connection with the Acquisition Materials a duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  By virtue of each of the Securities Act Defendants' failure to exercise reasonable care, the Prospectus contained misrepresentations of material fact and omissions of material fact necessary to make the statements therein not misleading.

92.     Members of the Class did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus issued in connection with the Acquisition at the time they purchased or otherwise acquired Synopsys common stock.

93.     By reason of the conduct alleged herein, the Securities Act defendants violated Section 12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, members of the Class who purchased or otherwise acquired Synopsys common stock pursuant to the Prospectus issued in connection with the Acquisition Materials sustained substantial damages in connection therewith.  Accordingly, members of the Class who hold the common stock issued pursuant to the Prospectus issued in connection with the Registration Statement have the right to rescind and recover the consideration paid for their shares with interest thereon or damages as allowed by law or in equity. Class members who have sold their Synopsys common stock seek damages to the extent permitted by law.

94.    Less than one year has elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which this complaint is based to the time that Plaintiff filed this action.  Less than three years have elapsed between the time that the common stock upon which this count is brought were offered to the public and the time Plaintiff filed this action.

## COUNT V

## For Violation of Section 15 of the Securities Act Against the Securities Act Individual Defendants

95.    Plaintiff repeats and realleges the allegations contained in ¶¶ 1-60, 76-80 as if fully set forth herein.

96.    This Count is brought under Section 15 of the Securities Act, 15 U.S.C. §77o, against the Securities Act Individual Defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of §15, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

97.    As detailed herein, each of the defendants committed primary violations of the Securities Act by engaging in conduct in contravention of Sections 11 and 12 of the Securities Act.

98.    The Securities Act Individual Defendants were each control persons of Synopsys by virtue of their positions as directors, senior officers, and/or significant shareholders of the Company. They each had direct and/or indirect business and/or personal relationships with other directors, officers, and/or major shareholders of the Company.  The Company also controlled the Individual Defendants, given the influence and control the Company possessed and exerted over the Individual Defendants and all its employees.

99.    By reason of the conduct alleged herein, the Company and the Securities Act Individual Defendants violated Section 15 of the Securities Act, and plaintiff and the Class have suffered harm as a result.

## CLASS ACTION ALLEGATIONS

100.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of:

(a)     All persons and entities that purchased or otherwise acquired Synopsys securities between December 4, 2024 and September 9, 2025, inclusive, against Synopsys and the Exchange Act Individual Defendants for violations of the federal securities laws under §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder; and

(b)     all persons who purchased or otherwise acquired Synopsys common stock in exchange for their shares of Ansys common stock in the Acquisition, for violations of Sections 11, 12(a)(2), and 15 of the Securities Act, against and the Securities Act Defendants.

(c)     Excluded from the Class are: (i) all Defendants; (ii) members of the immediate family of any Defendant who is an individual; (iii) any person who was an officer or director of Synopsys during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) Synopsys' employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person.

101.   The members of the Class are so numerous that joinder is impracticable. Synopsys securities are actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes there are hundreds, if not thousands, of members in the Class. Record owners and other Class members may be identified from records procured from or maintained by the Company or its transfer agent and may be notified of the pendency of this action using a form of notice similar to that customarily used in securities class actions.

102.   Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

(a)     Whether defendants violated the Securities Act or Exchange Act, or both;

(b)     Whether defendants omitted or misrepresented material facts, including whether the Acquisition Materials misrepresented and/or omitted material information in violation of the Securities Act;

1    (c) Whether defendants' statements omitted material facts necessary in order to

2 make the statements made, in light of the circumstances under which they were made, not misleading;

3    (d) Whether, with respect to the Exchange Act claims only, the defendants knew

4 or recklessly disregarded that their statements were false and misleading;

5    (e) Whether the price of Synopsys securities was artificially inflated; and

6    (f) The extent of damage sustained by Class members and the appropriate measure

7 of damages.

8   103. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class

9 sustained damages from defendants' wrongful conduct.

10   104. Plaintiff will adequately protect the Class' interests. It has retained counsel

11 experienced in securities class action litigation and its interests do not conflict with the Class'.

12   105. A class action is superior to other available methods for the fair and efficient

13 adjudication of this controversy. Because the damages suffered by individual Class members may be

14 relatively small, the expense and burden of individual litigation make it exceedingly difficult, if not

15 impossible and impracticable, for Class members to individually redress the wrongs alleged. There

16 will be no difficulty in managing this action as a class action.

## PRAYER FOR RELIEF

18   WHEREFORE, Plaintiff, on behalf of itself and the Class, prays for judgment as follows:

19   1. Declaring this action to be a proper class action, designating Plaintiff as Lead plaintiff

20 and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure

21 and designating plaintiff's counsel as Lead Counsel;

22   2. Awarding damages in favor of plaintiff and the other Class members against all

23 defendants, jointly and severally, together with interest thereon;

24   3. Awarding Plaintiff and the Class reasonable costs and expenses incurred in this action,

25 including counsel fees and expert fees; and

26   4. Awarding Plaintiff and other members of the Class such other and further relief as the

27 Court may deem just and proper.

28

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

DATED: November 25, 2025        Respectfully submitted,

/s/ Lucas E. Gilmore
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Lucas E. Gilmore (Bar No. 250893)
715 Hearst Avenue, Suite 300
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
lucasg@hbsslaw.com

*Liaison Counsel for Plaintiff*

**LABATON KELLER SUCHAROW LLP**
Francis P. McConville (*pro hac vice* forthcoming*)*
Connor C. Boehme *(pro hac vice* forthcoming*)*
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-047
fmcconville@labaton.com
cboehme@labaton.com

*Counsel for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## CERTIFICATION

I, Daniel J. Greene, as Executive Director of New England Teamsters Pension Fund ("New England Teamsters"), hereby certify as follows:

1.      I am fully authorized to enter into and execute this Certification on behalf of New England Teamsters. I have reviewed a complaint prepared against Synopsys, Inc. ("Synopsys") alleging violations of the federal securities laws, generally adopt the allegations without waiving the right to alter the allegations in a consolidated and/or amended complaint, and authorize the filing of this pleading and any subsequent motion for lead plaintiff appointment as needed;

2.      New England Teamsters did not purchase Synopsys securities at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.      New England Teamsters is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary. New England Teamsters fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class;

4.      New England Teamsters' transactions in Synopsys securities during the Class Period are reflected in Exhibit A, attached hereto;

5.      New England Teamsters sought to serve as a lead plaintiff or representative party in the following class actions filed under the federal securities laws during the last three years:

*Erie County Employees' Retirement System v. Cutera, Inc.*, No. 5:23-cv-02560 (N.D. Cal.)
*New England Teamsters Pension Fund v. RTX Corporation*, No. 3:23-cv-1274 (D. Conn.)
*In re Agilon Health, Inc. Securities Litigation*, No. 1:24-cv-0297 (W.D. Tex.)
*New England Teamsters Pension Fund v. The Trade Desk, Inc.*, No. 2:25-cv-1936 (C.D. Cal.)
*New England Teamsters Pension Fund v. West Pharmaceutical Services, Inc.*, No. 2:25-cv-2285 (E.D. Pa.)
*Khan v. Lockheed Martin Corporation*, No. 1:25-cv-6197 (S.D.N.Y.)

6.      Beyond its pro rata share of any recovery, New England Teamsters will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the

reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this 21st day of November, 2025.

Daniel J. Greene
Executive Director
New England Teamsters Pension Fund

2

## EXHIBIT A

### TRANSACTIONS IN SYNOPSYS, INC.

| Transaction Type | Trade Date | Shares | Share Price | Cost/Proceeds |
|---|---|---|---|---|
| Purchases | 01/03/2025 | 45 | $493.7100 | ($22,216.95) |
| Purchases | 01/30/2025 | 100 | $526.3600 | ($52,636.00) |
| Purchases | 03/28/2025 | 100 | $437.9500 | ($43,795.00) |
| Purchases | 03/28/2025 | 100 | $437.9500 | ($43,795.00) |
| Purchases | 04/29/2025 | 100 | $460.7700 | ($46,077.00) |
| Acquisitions[1] | 07/18/2025 | 398 | $584.7600 | ($232,734.48) |
| Purchases | 08/28/2025 | 200 | $612.1700 | ($122,434.00) |

---

[1] Shares of Synopsys common stock were acquired in exchange for shares of Ansys, Inc. common stock.